UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM McGILL, | ) | Case No.  5:07 CV 0928 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

William McGill filed this appeal seeking judicial reversal under 42 U.S.C. §405 (g) from the administrative denial of disability insurance benefits.  At issue is the ALJ's decision dated November 17, 2006, which stands as the final decision of the Commissioner.  See 20 C.F.R. §404.1481.  The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.  McGill challenges the denial of benefits contending that the ALJ erred in failing to adequately analyze the evidence of his psychological impairments from his treating physician.

There is a narrow focus to McGill's argument. His fundamental contention is that he is disabled by post-traumatic stress disorder ("PSTD").  He seeks remand for a "proper analysis" of Dr. Koenig's July 7, 2001 opinion consistent with SSR 96-2p. There is much at stake here because McGill's insured status expired on December 31, 2001. Consequently, the medical evidence that is most persuasive and relevant to support his claim of disability will be medical evidence that existed

5:07 CV 0928                                                         2

in 2001. The record establishes that McGill continued under the care of Dr. Koenig through 2006, but the administrative decision hinges on this earlier discrete period of time, and this July 7, 2001-report is the sole alleged "opinion" from that psychologist during the eligibility period.  McGill believes that the ALJ failed to appropriately weigh Dr. Koenig's 2001report that McGill's global assessment of functioning score [GAF] was 50 (Tr. 154), and connect it with the medical adviser's testimony that Dr. Koenig's report was consistent with unemployability (Tr. 565).

*Evaluation of opinion from the treating physician:*

What is at issue here is whether the ALJ applied the correct legal standard in assessing what is a "medical opinion." The uncontradicted opinion from a treating physician is entitled to complete deference.  See *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987); *Jones v. Secretary of Health & Human Serv.*, 964 F.2d 526 (1992).  As *Wilson v. Commissioner* instructs, the ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).  Reversal is required when in rejecting a treating physician's opinion the ALJ failed to give "good reasons" for not giving weight to that opinion. See *Wilson v. Commissioner of Soc. Sec.*  378 F.3d 541, 544 (6th Cir. 2004).  This requirement for articulated "good reason" has been long recognized since at least SSR Rulings 96-2p and 96-5p, which require the ALJ to articulate specific legitimate reasons supported by substantial evidence in the record that are sufficiently specific to make clear for subsequent review the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  The ALJ

5:07 CV 0928                                                      3

*must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. "Specifically, § 404.1527(d) of the [Social Security Administration]'s regulations prescribes that the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen*, 478 F.3d at 747. As *Bowen* illustrates, only in more unusual situations can the failure to follow these requirements be deemed harmless error. This is not a question over whether the ALJ's decision is supported by substantial evidence. Rather, "[a]n agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." *Wilson*, 378 F.3d at 545(quoting *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)).

*ALJ's Evaluation:*

The ALJ did not acknowledge Dr. Koenig to be McGill's treating psychologist. The ALJ glossed over the report in issue stating:

> On July 7, 2001, Fred Koenig, a Clinical Psychologist, formally diagnosed the claimant with PTSD and assigned him a GAF of 50. On that date the claimant reported to Mr. Koenig that he was better able to control his temper, he was able not to dwell on trauma, his concentration increased, and his only complaints involved loneliness and shyness.
>
> (Tr. 18).

5:07 CV 0928                                              4

*Commissioner's Argument:*

The Commissioner contends that McGill's reliance on the treating physician rule as set forth in 20 C.F.R. § 404.1527 and Social Security Ruling (SSR) 96-2p, for the proposition that Dr. Koenig's opinion was entitled to controlling weight is unfounded because Dr. Koenig did not render a medical source "opinion" to which the rule applies. According to the Commissioner, a medical source opinion is an opinion from an acceptable medical source about a claimant's ability to do work-related activities as defined within 20 C.F.R. § 404.1521(b). The Commissioner also refers the court to §404.1513(c), governing claimant's responsibility to provide medical evidence. Under this argument, Dr. Koenig's opinion that McGill had a GAF of 50 on July 5, 2001, is not a medical source opinion as contemplated in the regulations, as it does not express how McGill's impairment affects his ability to perform specific work-related mental activities.

The Commissioner's second argument is that a GAF score is not necessarily a measure of a person's ability to meet the mental demands for work. Both arguments are correct and interrelated since a GAF score does not measure mental demands for work.

*Discussion what is a "Medical Opinion":*

The first issue is whether the psychological report constitutes a "medical opinion," and the pertinent regulation, 20 C.F. R.§404.1527 supplies this definition:

> Medical opinions are statements from physicians and psychologists or other medical
> sources that reflect judgments about the nature and severity of your impairment(s),

5:07 CV 0928                                                5

> including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. §404.1527(a)(2).

The Commissioner's ruling in SSR 06-03p (2006 WL 2329939), which was issued in regard to who are and who are not "acceptable medical sources" with respect to this regulation sheds no additional light on what constitutes a "medical opinion." The ruling simply quotes the regulatory definition of "medical opinion" in regard to the required elements aside from the provider of the statement. Likewise, the prior ruling in SSR 96-2p merely referenced the code section and stated, "'medical opinions' are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight." *Id*., 1996 WL 374188, *2.

*Dr. Koenig's report is Not a "Medical Opinion":*

Dr. Koenig's July 2001 report recited some case history and stated that McGill was oriented in all spheres, coherent, and that his depression was mild now. ( Tr. 154). Other notes of improvement were that McGill was "able not to dwell on trauma or stressors," "able to control temper 95-96% better," and his nightmares were less frequent. The psychologist also noted negative features of combat flashbacks, paranoid, but not delusional thinking, and minor memory problems. Concentration was reported to have improved with medication, and McGill saw his family outside of "pcp." Reported activities were a hobby of working on cars, and volunteering to drive patient's to doctor visits. Dr. Koenig concluded his report with a "Multiaxial Evaluation" commencing with the primary diagnosis of PSTD and concluding with the current GAF score of 50. A GAF score of 41 to 50 is described in DSM -IV-TR to indicate: "**Serious symptoms** (e.g. suicidal ideation, severe

5:07 CV 0928                                                6

obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, p. 34 (4th Ed. text revision) (DSM-IV-TR).

A medical opinion: (1) is a statement from a physician or psychologist, or medical source; (2) reflects judgment about the nature and severity of impairment; (3) includes symptoms, diagnosis and prognosis; (4) states what activities the claimant is capable of; and (5), contains physical or mental restrictions.  Dr. Koenig's report with its Multiaxial evaluation including GAF score does not suffice.

The report is a statement from the treating psychologist. However, the report and the GAF score assigned to McGill do not  reflect judgment about the nature and severity of impairment, the activities of which McGill is capable, or  McGill's mental restrictions. The GAF score "represents 'the clinician's judgment of the individual's overall level of functioning,'" not necessarily the severity of impairment.  *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 415, 2006 WL 3690637 (6th Cir. Dec. 15, 2006); *Wesley v. Comm'r of Soc. Sec*., 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (quoting Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed.1994)). A GAF score in the 41 to 50 range may reflect either the clinician's opinion that the claimant has "serious symptoms" **or** "serious impairment" of social or occupational functioning. *Kornecky v. Comm'r of Social Security,*  167 Fed.Appx. 496, 511, 2006 WL 305648, 110 Soc. Sec. Rep. Serv. 315 (6th Cir.  Feb. 9, 2006). The score itself  "does not establish an impairment seriously interfering with the plaintiff's ability to perform basic work activities." *Id*., (quoting *Quaite v. Barnhart*, 312

5:07 CV 0928                                                      7

F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). Further the ALJ's failure to refer to a GAF score in formulating residual functional capacity does not make this formulation unreliable. *Kornecky*, 167 Fed. Appx. at 511; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 469 (6th Cir. 2003). The Commissioner has determined that there is no direct correlation between GAF scores measurements and the mental disorder severity listings.   65 Fed. Reg. 50746-01, 5076-4, 5076-5, 2000 WL 1173632 (F. R.); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)(unpublished). Consequently, the GAF score does not reflect a judgment on the severity of the mental impairment *vis-à-vis* the listed impairments. As pointed out in *DeBoard*, the Sixth Circuit has on several occasions affirmed the denial of disability benefits when the GAF score was 50 or lower. See *Deboard*, 211 Fed.Appx. at 415 (citing *Smith v. Comm'r of Soc. Sec.*, No. 02-1653, 2003 WL 22025046, 74 Fed.Appx. 548 (6th Cir. Aug. 27, 2003) (Global Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed.Appx. 358 (6th Cir.2001) (Global Assessment Functioning score of 35); *Thurman v. Apfel*, 211 F.3d 1270 (6th Cir.2000) (Global Assessment Functioning score of 50)). Dr. Koenig's July 2001 report is, therefore, not a "medical opinion" as defined under 20 C.F.R. §404.1527(a) or for purposes of SSR 96-2p. It was not entitled to deference and "good reason" for its rejection. The ALJ did not apply an incorrect legal standard to cause reversible error in the analysis of Dr. Koenig's report.

*The ALJ did not fail to adequately analyze evidence of psychological impairment:*

      "This court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

5:07 CV 0928                                              8

528 (6th Cir.1997). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. See *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815

5:07 CV 0928                                                   9

F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The ALJ noted Dr. Koenig's report and contrasted it to the mental residual functional capacity assessments from state agency physicians, which indicated no evidence of impairment prior to 2000 and that for the period of January 2000 through December 2001, McGill had the ability to understand, remember and carry out simple and some more complex tasks, had adequate concentration, was capable of dealing with superficial interaction, and would do best in work settings that did not have strict time and production standards ( Tr. 18-19, 239- 267). The ALJ further was supported by the testimony from the medical adviser that McGill was limited only to simple, low stress work during this 2000-2001 period.(Tr. 19, 562). The ALJ in addition reviewed the psychological reports and gleaned that McGill's friends stopped stating that he needed to seek help in April 2000, his sleep patterns had improved in July 2000, and by August 2000 he was attempting to socialize and interact at car shows. As for his claim of anger, there was the remark about friends and Dr. Koenig's report of ability to control anger. (Tr. 18).

The ALJ presented a hypothetical question to a vocational expert at the administrative hearing asking the expert to assume restrictions to simple, routine work with no high production

5:07 CV 0928					10

quota work or piece work, with superficial interaction with co-workers and supervisors and occasional interaction with the public without negotiation or confrontation with either group. (Tr. 569). The vocational expert responded that under these restraints, McGill could perform his past relevant work as a janitor. *Id.* These restrictions were supported by substantial evidence from the record and so was the determination that McGill could perform his past relevant work as a janitor during the 2000-2001 period. See *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002).

## *CONCLUSION*

Review of the record and arguments presented and the applicable law yields the conclusion that the Commissioner did not commit reversible error in the analysis of Dr. Koenig's report because it was not a "medical opinion" under 20 C.F.R. §404.1527(a)(2) and further that the determination was supported by substantial evidence. The decision denying disability insurance benefits is affirmed.

                                                  s/James S. Gallas  
                                        United States Magistrate Judge

Dated: March 12, 2009